TERRITORY OF HAWAII, BY LYMAN H. BIGELOW, ITS SUPERINTENDENT OF PUBLIC WORKS, *v.* LUM YIP KEE.

No. 1897.

ARGUED APRIL 23, 1930.          DECIDED MAY 9, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is a statutory submission on agreed facts. The defendant, Lum Yip Kee, is the owner of two certain parcels of land situate in the Waikiki district of Honolulu and within the Waikiki District Drainage System. One of these parcels is designated as parcel A and the other as parcel B. They are not contiguous to each other but are a considerable distance apart. Both of these parcels being in a depressed condition the Territory, for sanitary reasons and in pursuance of statutory authority, filled them. The cost of filling parcel A was $2,870.28 and the cost of filling parcel B was $1808.10, making the total cost of filling both parcels $4678.38. Of this the defend-

ant has paid $2678.38, leaving a balance of $2000 unpaid, which the Territory is now seeking to collect. On the 4th day of August, 1924, and subsequent to the filling of parcels A and B, the Territory filed in the registry of conveyances a document entitled "Lien for improving insanitary lands in Honolulu." This document recites that "under and in accordance with chapter 71 of the Revised Laws of Hawaii, 1915, and amendments thereto, notice is hereby given to all whom it may concern that the Territory of Hawaii claims a lien to the amount of $4,678.38, on the following described land:" Then follows, first, a description of parcel A and, second, a description of parcel B, and a statement of the number of cubic yards of fill on both parcels and the total cost of both fills. A copy of this document was duly served on the defendant. On August 26, 1927, the defendant obtained in the land court a decree confirming in him title to parcel B. The Territory, having notice of the proceedings in the land court, claimed a lien on parcel B for the sum of $138.13, this being the amount apportioned to parcel B for *draining* the "Waikiki Improvement District Drainage System." This claim of the Territory was recognized and paid. The claim, however, did not include any portion of the cost of *filling* parcel B.

The first question presented for our consideration is whether the Territory now has a lien on parcels A and B for the unpaid portion of the cost of filling them. Chapter 75, R. L. 1925, which relates to sanitary condition of land, after authorizing the superintendent of public works upon certain conditions, which in the instant case were fully complied with, to fill land that is in an insanitary or dangerous condition, provides, in section 984, as follows: "Cost of improvement; how apportioned. The cost of improvements made or completed by the superintendent of public works shall be apportioned as follows: 1. The

cost of filling any lot or parcel shall be borne by such lot or parcel; 2. The cost of any drainage system including the cost of drains or ditches, damages for property taken for the same and other expenses, if any, shall be apportioned among all the lots or parcels in the drainage district in proportion to their respective areas." It also provides in section 985 that "the cost of the improvements made or completed by the superintendent of public works as determined and apportioned pursuant to the provisions of this chapter shall constitute a lien upon the land improved, which lien shall have priority over all other liens." Section 986 contains the following provision: "Notice and recording of lien. Whenever work or improvement is done or completed by the superintendent of public works, he shall record in the office of the registrar of conveyances a notice of the cost of the work so done or completed and a brief description of the land on which the same is a charge, together with the name of the last known owner or owners, and shall also serve a copy of such notice upon such owner or owners in the manner provided in section 978."

It is contended by the defendant that the Territory has no lien because of its failure to separately apportion the cost of filling parcels A and B. This contention cannot be sustained. Section 976, R. L. 1925, provides that "if the board shall in any case recommend a system of drainage or of filling and drainage the superintendent of public works shall, upon receipt of such notice, prepare a map of the land so reported upon by the board of health and to be so drained, or filled and drained, which land shall constitute a drainage district." The section also provides that certain information shall appear upon the map or that such information may in the discretion of the superintendent of public works be embodied in a statement to accompany the map instead of being placed upon the map.

It is required that the map show the district to be drained or filled and drained, the location and size of each parcel or lot therein, a list of all known owners and occupants of such lots and the "estimates of the cost, respectively, of the filling of each lot or parcel of land in the district." Section 977 requires that the superintendent of public works shall notify each owner or occupant that a detailed statement and map or plan of the proposed improvement is on file in his office accessible to such owner or occupant. It is agreed by the parties that these provisions of law were fully complied with.

It is thus seen that the estimated cost of filling parcel A was apportioned to parcel A and the estimated cost of filling parcel B was apportioned to parcel B and that this appeared in the record on file in the office of the superintendent of public works and that the defendant was so notified. He was also notified that unless he filled these parcels within the time specified by the statute the Territory would fill them at the cost of the parcels themselves. The defendant did not fill them and the Territory proceeded to do so. The actual cost of filling parcel A, as we have already observed, was ascertained to be $2870.28, and the actual cost of filling parcel B was ascertained to be $1808.10. The keeping of a record from which the actual cost of filling each parcel can be ascertained is the only practical method of making the apportionment. That such a record must have been kept in the instant case is shown by the agreed fact that the cost of filling each parcel was ascertained. It could not have been ascertained without such a record. The cost of filling land that is required by the statute to be filled is not made a personal charge against the owner but a charge against the land itself. Only the land can be subjected to the payment of the charge. The purpose, therefore, of requiring the segregation of the cost of filling each parcel, when

the land although under a common ownership is composed of noncontiguous parcels, is that each parcel shall be required to bear only its own burden and not be required to share the burden imposed on other parcels. We think under these circumstances that the cost of filling these parcels was apportioned as required by the statute. Not only was the estimated cost of filling each parcel apportioned but the actual cost of filling each parcel was also apportioned.

The defendant further contends that no lien attached because it does not appear from the notice of lien that was filed in the registrar's office that an apportionment of the cost of filling parcel A and parcel B had been made. This contention likewise cannot be sustained. The statute, to which we have already referred, does not make the lien dependent upon the filing of notice but only makes it dependent upon the filling of the land and the determination and apportionment of the cost. · The lien, therefore, in the instant case attached when the parcels of land were filled and the cost determined and apportioned. In this respect the statute is, for instance, totally different from section 2891, R. L. 1925, which provides for a mechanics' and materialmen's lien. Such a lien, by express statutory provision (Sec. 2892), does not attach unless a notice thereof shall be filed in the office of the clerk of the circuit court where the property is situated. It is apparent from section 987, which provides for the time and methods of foreclosure (one of the methods being by suit in equity, which this submission in effect is), that the filing of the notice in the instant case and the service of a copy on the defendant were a necessary prerequisite to the Territory's right to enforce the lien but they were not indispensable to the lien itself. The conditions upon which the lien itself attached were fully complied with. Moreover, section 986, which relates to notice and recording of lien,

does not require that the apportionment of the cost shall appear in the notice. What is required is that the cost of the work done or completed and a brief description of the land on which the same is a charge together with the name of the last known owner or owners shall appear in the notice. Nothing is said in the statute about a recital in the notice of the apportioned cost of the improvement. We think the notice that was filed contained everything that the statute required.

Finally, it is contended by the defendant that even if the Territory had a lien, so far as parcel B is concerned it was lost by the failure of the Territory to give notice of it during the pendency of the proceeding in the land court for the registration of title to this parcel. Section 3229, R. L. 1925, provides that "every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, shall hold the same free from all incumbrances except those noted on the certificate, and any of the following incumbrances which may be subsisting, namely: * * * Fifth, any * * * statutory liability which may attach to land in the Territory as a lien prior to or independent of, the recording or registering of any paper * * *." It is conceded that the lien for the filling of parcel B was not noted on the certificate of title issued by the land court. The statute just quoted, however, also provides that the holder of the certificate of title does not take it free from any statutory liability which may attach to land in the Territory as a lien independent of the recording or registering of any paper. As we have already seen, the lien on parcel B was not dependent upon the recording or registering of any paper, but on the contrary it was entirely independent of the recording or registering of any

paper. For this reason the lien on parcel B was not forfeited.

Regarding the application of the payments that were made by the defendant we have for the present reserved decision because of the statement made by defendant's counsel at the hearing that in the event we should decide that the Territory had a lien on both parcels A and B the amount of such lien would be paid.

*E. R. McGhee,* Third Deputy Attorney General (*H. R. Hewitt,* Attorney General, with him on the briefs), for the Territory.